You may begin. Good morning. May it please the Court. My name is Jia Kim, appearing on behalf of Appellant Michael Baird. I'll be focusing on two issues this morning. First, the lifetime term of supervised release, and second, the special condition of supervised release, imposing GPS monitoring, as well as the cost of that monitoring for five years. First of all, the lifetime term of supervised release violates Section 3553A's requirement that a sentence be sufficient but not greater than necessary to comply with the purposes to achieve the purposes of sentencing, the parsimony principle that the Supreme Court called an overarching provision in Kimbrough. This is contrary to the government's argument that the district court could exercise its discretion to impose lifetime supervised release, even if, quote, it is possible that a shorter term of supervision could be sufficient. Here, the district court also placed undue weight on the guidelines recommendation of lifetime supervised release for sex offenders generally. Let me ask you, getting back to the lifetime term, we upheld such a term in COPE. Why isn't COPE applicable here? It was a recidivist sex offender. Sure. I think there are a couple reasons that this case is different from COPE. First of all, in COPE, the defendant had a 20-plus year history of a sexual interest in children. Here, all of Mr. Baird's criminal convictions in history occurred within the span of less than six years. When Congress raised the statutory maximum of supervised release in 2003 to lifetime, it noted in the legislative history that it was particularly concerned about a subset of sexual offenders, particularly sexual abuse offenders whose crimes showed that they had this lifelong, aberrant sexual disorder that could not easily be eliminated. If it has to be lifelong, there's no sense giving him life, because we have to wait until the end of his life before we find it's lifelong. What you're saying, I assume, is a certain period of time in which the district court can reasonably project that he has a lifetime problem. So he looks at this individual, and this is the second time he's become involved, so he's a recidivist. He did exactly the same thing again. He learned absolutely nothing the first time. There's something motivating him to do that. What is the test that we look at? Is it abuse of discretion? Is it to the determination by the judge that this person has real serious problems, and in order to protect youth in the community, there has to be lifetime review of him, supervision? I think that the way that the district court has looked at the terms of supervised release has been likened to an abuse of discretion standard. However, in this case, the district court not only looked at the particulars of the offense, and it should be noted that for the state offense, Mr. Baird served approximately 17 months in custody. Here, the sentence is 120 months, which was the mandatory minimum, and he spent 13 months on parole. Here, the minimum for the offenses would be three years. So I think we can't necessarily say just on the basis of the prior state convictions that lifetime supervised release would be enough. It's a little difficult to say, to tell a district judge, now, you're wrong, and we want him to commit two or three more offenses, and then you can have him on lifetime. Isn't there some, don't we have to give some discretion to the district court to single out the individuals that really do need some lifetime supervision? There should be this discretion, certainly. Comparing this case to Cope, however, the defendant in that case, the judge noted that he would be 68 at the time of his release, and he said that any term of years he would impose would be lengthy enough that the difference between a lifetime term and a term of years would not be, would not have a great impact in that case. Here, Mr. Baird will be 45 when he's released in 2015, and especially in light of the breadth of the conditions imposed, I think that it has a far greater impact upon the, you know, his day-to-day activities and what makes a sentence reasonable. You focus on age. Is this just something we're going to use for people who are 60 or older? No, it's not. I mean, there have been other cases. The Second Circuit in Hays, when they imposed lifetime supervised release, they also noted there the defendant would be 68 when he was released. However, I think the age does need to be taken into account when you look at the breadth of the conditions involved. For instance, Mr. Baird cannot use the computer or Internet, again, except in the scope of his employment. And for someone being released in 2015, I think that's an important consideration to take in mind. There are also associational and residential restrictions, places he can frequent, that thinking about a term of years, whether it be 5 or 10 or even 20, versus lifetime, I think that's an important consideration. I think is a factor that we have to take into account here. Now, why shouldn't we take the congressional indication in 3583K that life is suitable for supervised release for this sort of offense, as well as the sentencing commission's policy statement that they recommend a lifetime of supervised release? Why isn't that an indication that there's no abuse of power? Why isn't that a recommendation? First of all, starting with the statute, supervised release there is the statutory max. The minimum is any term of years. So Congress was saying that in a certain subset of cases, it was particularly concerned about violent sexual assaults, that lifetime monitoring may be appropriate. It indicated that when, you know, the record showed a deep-seated disorder that couldn't be treated within a few years of being released, that in those cases, perhaps lifetime was appropriate. Isn't this a case where, you know, he was actually making arrangements to meet a girl, a child, which was the same as the conduct of the prior offense? Isn't this exactly the sort of case where you have a dangerous recidivist who is acting on an effort to, you know, get away with abuse a child? In both cases, the conduct was substantially similar. He communicated with an undercover officer. Thinking it was a child, though. Yes, that's true. I think, you know, just because there is a maximum set by Congress, and the sentencing commission, for whatever reason, interpreted that maximum as a recommendation for all sex offenders, I think there still need to be distinctions drawn within the offense conduct. Suppose he gets this life supervision, and five years after he's out of prison, he's demonstrated that he's really come to grips with this, and it's no longer a problem. Is he able to move the court to change the provisions? He can move the court for early termination. However, going back to 3553A, at the time the sentence is imposed, it must be, you know, sufficient, but not greater than necessary. So I think the modification can't compensate for a sentence that is overlong to begin with, but it is an option. But he can't have modification even for the amount of time. That is, it could be cut to years instead of life. I believe it can, yes. If I may briefly address the GPS monitoring issue. The GPS monitoring that the district court imposed did not meet the statutory requirement that it be reasonably related to the defendant's history, the nature of offense, the offense and the purposes of supervision, as well as constituting no greater deprivation of liberty than required to achieve those purposes. First of all, it should be noted that on this record, we don't know exactly what the GPS monitoring would consist of. For instance, we don't know how precisely it could track the movements, whether it would be monitored in real time, whether it would be monitored around the clock, whether that information would be stored, how obtrusive or invasive the, you know, the GPS, we could say that it's not reasonably related to the offense conduct or Mr. Baird's prior history. Does it have to be related to the offense conduct? Didn't we say in U.S.V.T.M. that as long as it's reasonably related to the factors that are set out in 3583D, it doesn't have to be related to the conduct? Certainly. It could be related to deterrents, but the kind of offenses that, you know, even Mr. Baird's committed in the past would not be deterred by this tracking of his movements. Those offenses were committed by e-mailing, instant messaging. Even the travel element in this offense involved him going to a public place, a bookstore, not a place specifically frequented by children, to meet the undercover agent. Therefore, I don't see even the nexus to sort of the general purposes of supervision here of re-enactment. I don't see the need for rehabilitation or deterrence. I see I'm running out of time, so if there are no further questions, I would like to reserve the remainder of my time. Good morning. May it please the Court. My name is Elizabeth Yang, and I represent the United States in this matter. I would like to address the reasonableness of the lifetime term of supervisory lease that the Court imposed on Mr. Baird, as well as respond to defense's arguments on the GPS monitoring condition. And if the Court should have any questions on any of the other issues, I would also be happy to address those. The defendant in this case is not only a recidivist, but he is a recidivist of the most troubling kind. He did not only repeat very similar criminal conduct, but he escalated it. He acted actively on his sexual interest in children by making arrangements to meet who he believed was a 14-year-old girl for the admitted purpose of having sex. As the Court is aware, based on the record, when he arrived at the meeting location, he not only had made a hotel reservation for that night, but he carried condoms with him. At the same time he was actively acting on his sexual interest in children, he was also amassing a significant collection of child pornography. At the time of the search warrant, he was found with over 900 images and 40 videos of child pornography. This is the type of individual, as a district court recognized, that both Congress and the Sentencing Commission determined is deserving of a lifetime term of supervisory lease. Kagan. Can a lifetime term of supervisory lease ever be an abuse of discretion? Under what circumstances should we draw the line and say this goes too far? I believe that a lifetime term of supervised release relatively rarely is an abuse of discretion. I think if you have, particularly in this case, a demonstrated recidivist who has previously been put on probation, given the opportunity to treat his problems and reoffends, I don't think that there is an abuse of discretion on the part of the district court. The district courts see these offenders on a regular basis. They are familiar with their characteristics, with the nature of the offense, the seriousness of the offense, the deterrent effect that is necessary in the community, and most importantly, the need to have a supervision period sufficient to rehabilitate the defendant, to attempt to get the individual the treatment that they deserve. And in Mr. Baird's case, he previously was put on a term of three years' probation. And although the record is unclear, within that three years, he failed to make court-ordered counseling appointments, he made misstatements to his probation officer, he made false statements to his counselor, and then within two years of his probation period, he was found to be in possession with a computer in direct violation of the terms of his probation. I think you've outlined in the brief the reasons for it, but the thing that strikes me, and I think it's what's bothering us, where do they draw the line? That is, why not 10 years? Why life? And the district judge, of course, is making a determination based upon having the facts, having the person in front of them, and we have to decide now whether that was reasonable. What's the test that we apply? Your Honor, I think it's a reasonableness inquiry. Is what? I think it's a reasonableness inquiry. Well, that might be, but it seems to me that Gall kind of changed that a little bit and talked about a test being abuse of discretion in determining the reasonableness. Now, that puts another layer of, I understand, protection on the district court making its determination. But what's the government's position? Is it just straight reasonableness that we're going to decide whether it's reasonable or not, or is there an abuse of discretion standard that's involved overlying this? I believe it's a reasonable standard that is somewhat akin to abuse of discretion. I do think that this Court should afford a great deal of deference to the district court's discretionary decision in this case, particularly given the record in which Judge Otero specifically noted he does have the discretion. He recognized that he had available to him any term of years from five years to life, and this was this individual before him, given the facts of this case and his offense and his history, was deserving of a lifetime term. And I think that this Court should defer some discretion to Judge Otero's decision. Do you agree with your adversary that if things turn out better for him after his prison sentence, that he has the right to come in and ask for a change in the supervised release? I believe, Your Honor, under 18 U.S.C. 3583e1, that is the mechanism that the defendant has to go back before the district court and ask for either modification in the terms of his supervised release or the length of his term of his supervised release. I do believe, however, that this defendant, given his past history, given his noncompliant behavior when previously on supervision, is not someone who is going to be amenable to that sort of modification a few years outside of prison. But he does have that mechanism available to him. Should he this time commit to treatment, commit to working with a court-ordered counselor in a court-ordered treatment program to address his issues, and should he exhibit the ability to control his behavior, I think given his past behavior, that is probably optimistic. But he does have the ability to do so if he feels that he is worthy of that. Counsel, I have some questions on the GPS monitoring. And I can see a lot of good reasons for the lifetime supervision. With the GPS monitoring, I'm not sure. I don't have a handle on why it's reasonable here. Not totally. So I'd really like to hear more about that, including some understanding of what happens with the data, how it works. Is there someone who analyzes his movements? Is the information saved? In other words, what's the purpose of the GPS monitoring? Yes, Your Honor. In preparation for our argument, I did contact the United States Probation Office, which the division which oversees electronic monitoring, which is the Home Confinement Division. These facts are not on the record. I did provide them to defense counsel, and I can provide them to this Court, given Judge Gould's question, if that's acceptable. Yes. You can submit it after. Yes, Your Honor. Should I orally present it? Yes, please. According to Vivian McCrary of the Probation Office, the GPS monitoring device that is currently used by probation tracks a defendant's movements in real time, latitude, longitude. It's a locational director. The data that is extracted is maintained by the company that runs the GPS program for 90 days. She says, as it works right now in practice, the probation officer assigned to the particular offender will not be checking the offender's movements every minute of every day. In fact, it's more akin to random spot checks. Right now there are apparently two individuals in the central district who are on this monitoring system post-conviction as sex offenders, and they check the data once or twice a week just to confirm that the individual is either where he was supposed to be or, you know, if he said he was going somewhere, that he actually went to that place. They can retrieve 90 days' worth of data. She has not reached the situation where they have had to do that. But it is information that is retained on a real-time basis, but it is checked approximately two times a week. How is that? I'm sorry. I was just going to, as a follow-up, you wouldn't know if an offender was at a grid that showed you what was at the coordinates, which for an urban area would just cover too much. So I can see how it would be useful after the fact to prove where someone had been. But I'm wondering what the utility of it is to monitor and notice, oh, here's where he's going, that we should do something to deter him. So am I missing something there? Actually, Your Honor, I did omit one other additional fact that Ms. McCrary told me. When a defendant is first outfitted with a GPS monitoring device and probation does the home visit, you know, approves their residence, they do set up what are known as restriction or exclusion zones where the offender or the defendant is not permitted to go. For example, airports or train stations, those sorts of areas. If the offender, while on GPS monitoring, enters one of those zones, an alert is immediately sent to the probation officer who is supervising that defendant. And then there is a whole internal process they go through in terms of confirming and verifying the violation and doing what the probation office does in supervising the defendant. So there are areas that will be designated before the defendant is released into the community that, if he does enter, will alert the probation office. And defense counsel made an argument in their brief that a GPS monitoring device wouldn't deter Mr. Baird given that his offense conduct involved using a computer. But I think the point that's missed is that an individual like Mr. Baird, who when he was previously on probation made excuses such as, I can't make it to my appointment today, I'm stuck, I don't have a license, I can't drive, I'm stuck at home, with a GPS monitoring device, the probation office could verify, could confirm the defendant's own self-reporting. And given his history of untruthful self-reporting, I think that would have a huge deterrent effect on someone like Mr. Baird, who will know that he's being monitored, that the probation office can actually confirm or check that he is where he says he was going to be or he isn't where he says he, you know, couldn't be. And that, given the escalation in his criminal conduct, his willingness to actually venture outside of his home in order to satisfy sexual interest in children, I believe would have a huge deterrent effect. And I think Judge Otero recognized that as well. The part of this GPS that bothers me is I'm not very good at all of this new types of things that are going on, and there was no hearing, no evidentiary hearing, nothing in the district court record that I saw where this was all explored. That is, what will happen, et cetera, et cetera. It strikes me that I wonder if we just know enough about the imposition of this on the defendant's life to know whether or not it's reasonable when we really don't have a record as to its effect and how it would be used. I mean, we've heard you speak, but when we write the opinion, we have to say it's reasonable because has there been an evidentiary hearing or some type of hearing in a district court of which you're aware where this was explored? In the Central District of California, I am not aware, but I did not inquire within my office prior to today's hearing. I had inquired as to whether this condition had been imposed in similar cases for sex offenders. And in this case, did the district judge ask for some type of presentation from the government as to what the effect of this monitoring would be and how it would work? He did not, Your Honor. Okay. Well, I think Judge Wallace is raising some important questions, and what I'm wondering is, you've made a presentation that in part gives us data that's not in the record, and it seems to me it would be most fair if that kind of presentation was presented in a hearing with witnesses, and if Ms. Kim, on behalf of her client, could, you know, could bring out any question about it or a counterpoint of view. So I'm just sort of speaking out loud. Sorry, Judge Aikuda. I didn't mean to block your question. Okay. I think you're over time, ma'am. Thank you. Thank you. If there are no further questions, I would like to submit the case. Okay. Thank you. This case is submitted.
judges: Wallace, Gould, Ikuta